1-08-3016 and 1-10-0702 (Cons.)

THIRD DIVISION
December 29, 2010

Nos. 1-08-3016
      1-10-0702

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| | ) | the Circuit Court |
| Plaintiff-Appellee, | ) | of Cook County. |
| | ) | |
| v. | ) | |
| | ) | Honorables |
| JERRY GILLESPIE, | ) | Nicholas R. Ford, |
| | ) | Stanley Sacks, |
| Defendant-Appellant. | ) | Judges Presiding. |

PRESIDING JUSTICE QUINN delivered the opinion of the court:

Defendant Jerry Gillespie appeals from orders of the circuit court denying him leave to

file his third and fourth successive petitions for relief under the Post-Conviction Hearing Act

(Act) (725 ILCS 5/122-1 *et seq.* (West 2008)) and dismissing two petitions for relief under

section 2-1401 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2008)).

For the following reasons, we affirm.

I.  BACKGROUND

Following a 1994 jury trial, defendant was convicted of first degree murder based on a

theory of accountability for his participation in the fatal shooting of beauty shop employee

Jeffrey Rodgers.  On February 13, 1993, at about 9 p.m., six masked men entered the beauty shop

and ordered everyone to the ground.  Three of the masked men used guns to shoot and kill

1-08-3016 and 1-10-0702 (Cons.)

Rodgers in retaliation for the murder of the brother of a gang member.

Following his arrest, on February 22, 1993, codefendant Antwan Holiday provided a court-reported statement. Holiday admitted that he held the rank of chief of security for his street gang and that KB (Johnell Alexander) ordered a hit on the victim because the victim was involved in the murder of a gang member. Holiday implicated defendant and stated that defendant had a .38-caliber weapon, while codefendant Jeffrey Clarkson had a 9-millimeter gun and another gang member had a Glock. Holiday stated that he acted as a security agent at 56th and Racine while the armed men entered the beauty shop and killed the victim. A 9-millimeter gun was recovered from Clarkson's bedroom. Holiday and codefendant Gerald Earl were tried simultaneously before separate juries. Both Holiday and Earl were convicted of first degree murder and sentenced to 60 years in prison.

On direct appeal, this court corrected the mittimus to reflect only one count of first degree murder and affirmed Holiday's conviction and sentence. People v. Holiday, No. 1-94-4185 (June 20, 1997) (unpublished order under Supreme Court Rule 23). On direct appeal, this court reversed Earl's conviction and remanded for a new trial because the State failed to present evidence, which was apparently available, to connect Earl to the guns and ammunition admitted into evidence. People v. Earl, No. 1-94-3449 (January 23, 1998) (unpublished order under Supreme Court Rule 23).

Two other codefendants were convicted of the first degree murder of Rodgers in separate trials. Willie Hughes was convicted and sentenced to 60 years in prison. On direct appeal, this court affirmed the judgment. People v. Hughes, Nos. 1-94-4184, 1-95-0340 & 1-95-2942, cons.

-2-

1-08-3016 and 1-10-0702 (Cons.)

(June 30, 1997)(unpublished order under Supreme Court Rule 23). Jeffrey Clarkson was convicted and sentenced to 40 years in prison and this court affirmed the judgment on direct appeal. People v. Clarkson, No. 1-94-4398 (June 27, 1997) (unpublished order under Supreme Court Rule 23).

In defendant's case, police officers initially treated defendant as a witness during their investigation of the Rodgers homicide. On February 18, 1993, at about 2 p.m., defendant accompanied Detectives McDonald and Rajkovich to the police station. Following an interview with Detective Clancy, defendant provided an exculpatory statement which implicated co-defendant Clarkson. Defendant then repeated the statement to an assistant State's Attorney who reduced it to writing. After that interview, which concluded at approximately 3 a.m., the assistant State's Attorney asked defendant whether he would testify before the grand jury. Defendant agreed, and, citing safety factors, defendant opted to spend the night at the police station.

The next morning, on February 19, 1993, Detective Rajkovich took defendant to testify before the grand jury. During his grand jury testimony, defendant stated that on February 11, 1993, he was walking down the street and met "Ray Ray" (codefendant Clarkson). Defendant testified that he asked Clarkson what happened with the shooting at the beauty salon and Clarkson replied that he did not know. Defendant testified that later that day he spoke with a boy named Michael, who told defendant that Ray Ray (Clarkson), Twan (Antwan Holiday), and Six-Point (Willie Wilson) were responsible for the beauty shop shooting. Defendant testified that when he saw Clarkson again that day, defendant told Clarkson that he heard that Clarkson,

-3-

Holiday, and Wilson were responsible for the shooting. Defendant testified that Clarkson agreed and told defendant that they shot the victim in the beauty salon while the victim was on the phone. Defendant also testified that he had known Clarkson for about five years, Clarkson was a member of the Gangster Disciples, and Clarkson usually carried a 9-millimeter gun.

After the grand jury, Detective Rajkovich was driving defendant to defendant's residence when the detective received a page. The detective returned the page and learned that defendant had been implicated in the murder by codefendant Hughes. Detective Rajkovich returned defendant to the police station. At the station, Detective McDonald spoke with defendant and told him that it appeared that defendant had lied in his previous statement. Defendant admitted that he had lied and subsequently provided an inculpatory, court-reported statement.

In the court-reported statement, defendant admitted that he was a member of the Gangster Disciples street gang. Defendant stated that KB (Alexander) was in control of his neighborhood for the Gangster Disciples and that KB's duties included directing members, holding meetings, and telling members to be on security. Defendant stated that on the day of the Rodgers murder, at about 7 p.m., he met with codefendants Holiday and Clarkson at his house. Defendant stated that Holiday and Clarkson were also members of the Gangster Disciples and they informed defendant that they were going to kill a rival gang member who worked at the beauty shop because that person was involved in the murder of one of the Gangster Disciples' leaders. Holiday and Clarkson told defendant to meet them at 55th and Racine between 8 and 8:30 p.m., and that defendant's role was to act as security while they shot the rival gang member. At about 8 p.m., defendant went to the designated corner, which was located across the street from the

beauty shop, and Alexander directed defendant to his security post. Defendant stated that Alexander was directing everyone regarding what to do during the murder. Defendant noticed that Holiday was carrying a Glock, and Clarkson was carrying a .38- or .357-caliber revolver. Defendant watched six gang members, including three members who were armed, walk toward the beauty shop. A short time later, defendant heard gunshots from inside the beauty shop, and defendant left the scene and went home. Defendant stated that he had not been threatened by police officers or an assistant State's Attorney and that he provided the statement under his own free will.

Prior to trial, defendant filed a motion to quash arrest and to suppress his inculpatory statements. At the hearing on his motion, defendant testified that on February 18, 1993, at about 3 p.m., he was driving in his car when police officers pulled in front of him and blocked his way. Defendant testified that detectives got out of their vehicles with weapons drawn, ordered defendant out of his car, handcuffed defendant, and placed defendant in a police car and took him to the police station. Defendant testified that he was not advised of his Miranda rights and was held incommunicado.

Defendant testified that the detectives did not ask him whether he wanted to testify before the grand jury and no one provided him with the option to sleep at home on the evening before testifying before the grand jury. After he testified before the grand jury, defendant was returned to the police station and defendant testified that he was physically and psychologically abused by police officers. Defendant testified that he was told he would go to jail for 100 years if he did not cooperate with the murder investigation. After he denied involvement in the Rodgers murder,

defendant testified that Detective Foley slapped him in the face, grabbed him by the throat, and then slapped him again. Defendant also testified that Detective McDonald knocked over the chair that defendant was sitting on. On cross-examination, defendant testified that he voluntarily signed the statement which said that he was well-treated by the police, but defendant refuted the veracity of his signed statement. The State also presented several witnesses to testify at the suppression hearing. After hearing arguments, the circuit court made lengthy findings of fact. The circuit court found that defendant voluntarily went to the police station to assist in the murder investigation and was not advised of his Miranda rights initially because he was considered to be a witness at that time. With regard to the physical coercion claim, the circuit court found no credible evidence of police brutality. Accordingly, the circuit court denied defendant's motion to quash arrest and suppress his statements.

At defendant's trial, Colleen Lashley testified that on February 10, 1993, she was working at the beauty salon when six masked men entered the salon and fatally shot Rodgers. Lashley testified that the shooters used a revolver, a Glock semiautomatic pistol, and a Tec-9 pistol. On February 20, 1993, defendant's mother retrieved and provided police officers with a .38-caliber revolver from the family home. Lashley testified that the revolver was similar to the one used in the shooting. Firearm technician Richard Chenow testified, among other things, that he inspected the bullets recovered from the victim and opined that they were fired from either a 9 millimeter or .38-caliber gun, though the bullets had class characteristics consistent with being fired from the .38-caliber revolver.

Defendant testified that on February 10, 1993, he was at home with his friend, Terrence

Parks. At about 7 p.m., defendant left with Parks to take a drive. Defendant testified that he and Parks returned to the neighborhood around 9:30 p.m., where "Pete" flagged them down around the corner from where the shooting had taken place. Defendant testified that "Pete" told him about the shooting then advised defendant that he should go home. Defendant identified a photo of Johnell Alexander as being "Pete" and "KB." Defendant testified that he went home and spent the rest of the evening there. Parks testified and confirmed that he was with defendant during this time.

Defendant then testified consistent with his pretrial testimony regarding the events that preceded his arrest. With respect to his claim of physical coercion, defendant raised a new allegation that unidentified police officers had threatened to burn him with a cigarette and beat him if he did not give an inculpatory statement. Defendant testified that Detective Foley slapped him in the face twice and grabbed him by the throat. Defendant also testified that another detective knocked over the chair that he was sitting on. Defendant denied that he provided gang members with a gun from his house to use in the murder. Defendant testified that a female assistant State's Attorney told him the details of the murder and instructed him to repeat those details when the court reporter arrived.

On cross-examination, defendant testified that he, Holiday, Clarkson and "Main Main" (Hughes) were all members of the Gangster Disciples. Defendant testified that another member of the Gangster Disciples, Insane Wayne Wilson, codefendant Willie Wilson's brother, had been murdered prior to the Rodgers shooting. Defendant further testified that Clarkson was laughing when he confessed to defendant the day after the Rodgers shooting that he, Wilson and Holiday

had participated in the murder. Defendant testified several times that he told the truth in the handwritten statement he gave the first assistant State's Attorney and during his grand jury testimony. Defendant testified that after testifying before the grand jury, he was physically abused by police officers some three to four hours after arriving at Area One police headquarters. Defendant maintained that it was after this abuse that he gave the court-reported statement containing the inculpatory details given to him by the police and the female assistant State's Attorney. In defendant's court-reported statement, he stated that he had not been threatened by an assistant State's Attorney or police officers and that he gave the statement under his own free will.

Defendant's mother testified that she kept the .38-caliber gun locked in a gun case and that she was the only person who had a key to the case. Defendant's mother also testified that on February 18, 1993, she learned that defendant was arrested by the police and went to the police station, but she was not allowed to speak to defendant until two days later.

Detective Foley testified that he was involved in the Rodgers murder investigation and present in the interview room when defendant made the inculpatory statement. Detective Foley testified that he did not slap or grab defendant by the throat during the interview. Detective Foley also testified that he did not see any other police officers physically abuse defendant.

After deliberations, the jury found defendant guilty of first degree murder. Defendant was subsequently sentenced to 40 years in prison for the first degree murder of Rodgers. On direct appeal, defendant argued that: (1) the circuit court erred in denying his motions to quash his arrest and suppress his inculpatory statement; (2) the circuit court erred in admitting two guns

1-08-3016 and 1-10-0702 (Cons.)

into evidence; (3) the circuit court erred in allowing testimony regarding a car into evidence; (4) a witness's testimony violated a motion *in limine*; (5) defendant was denied a fair trial due to prosecutorial misconduct; (6) the circuit court erred in allowing guns and photographs to go back to the jury during deliberations; and (7) defendant was not proven guilty beyond a reasonable doubt. This court resolved defendant's direct appeal and affirmed his conviction and sentence. People v. Gillespie, No. 1-94-4135 (June 30, 1997) (unpublished order under Supreme Court Rule 23).

In June 1997, while his direct appeal was pending, defendant filed his initial *pro se* postconviction petition, which was summarily dismissed by the circuit court. Counsel was appointed to represent defendant in his appeal of the summary dismissal. That counsel, Erika Cunliffe, filed a motion requesting that this court dismiss defendant's postconviction appeal without prejudice because counsel needed additional time to obtain and review the Office of Professional Standards (OPS) report which detailed police brutality at Area 2 police headquarters. This court granted that motion and dismissed the appeal without prejudice. People v. Gillespie, No. 1-97-3075 (1998) (dispositional order).

In January 1999, with the assistance of that same counsel, defendant filed an amended postconviction petition in the trial court alleging that: (1) he was innocent of the crime; (2) newly discovered evidence corroborated his claim that his confession was induced by physical and psychological coercion; (3) the State violated its duties under Brady v. Maryland, 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963), by failing to provide the defense with evidence of a pattern and practice of police brutality; (4) trial counsel was ineffective for not investigating and

presenting evidence of police brutality at Area 2 police headquarters; (5) trial counsel was ineffective for failing to subject the guns and ammunition admitted into evidence to any meaningful testing; and (6) the admission of the guns and ammunition into evidence prejudiced defendant.

On September 1, 1999, defendant's motion for substitution of judges was granted and his case was transferred to Judge Mary Ellen Coghlan. After hearing arguments from the parties, on May 18, 2000, Judge Coghlan issued an 11 page written ruling rejecting defendant's claims. In that order, the circuit court found that defendant failed to establish a freestanding claim of his actual innocence, citing People v. Washington, 171 Ill. 2d 475, 479 (1996). Rather, the circuit court, relying on People v. Hobley, 182 Ill. 2d 404, 444 (1998) (Hobley II), held that defendant's newly discovered evidence claim, that police officers at Area 2 headquarters engaged in a pattern and practice of police torture, was being used to supplement the assertion that defendant's confession was coerced and involuntary and that the introduction of his confession at trial violated his constitutional rights. Therefore, defendant's allegations failed to support a freestanding claim of actual innocence. With respect to defendant's alleged Brady violation, the circuit court held that defendant failed to demonstrate that the prior allegations of police brutality were: (1) not unduly remote, (2) were against the same officers, and (3) were similar to the allegations put forth by defendant. Also, there was no evidence of injury consistent with police brutality. The circuit court further found that defendant's claims of ineffective assistance of trial counsel were barred from review pursuant to the doctrines of waiver and *res judicata*. Consequently, the circuit court dismissed defendant's amended petition without conducting an

1-08-3016 and 1-10-0702 (Cons.)

evidentiary hearing.

On appeal, this court affirmed the circuit court's judgment. People v. Gillespie, No. 1-00-3524 ( December 31, 2003) (unpublished order under Supreme Court Rule 23). In affirming, this court held that defendant's amended postconviction claim of newly discovered evidence to support his claim that his confession was coerced was forfeited where the issue had been fully adjudicated and where defendant's proffered evidence was neither "new" nor of such conclusive evidence that it would probably change the result on retrial. The Illinois Supreme Court denied defendant's petition for leave to appeal. People v. Gillespie, 208 Ill. 2d 545 (2004).

On August 1, 2007, defendant filed a *pro se* second postconviction petition alleging that the statute authorizing mandatory supervised release was unconstitutional. On September 20, 2007, the circuit court found that defendant failed to meet the cause and prejudice test for successive postconviction petitions and denied him leave to file the petition.

On July 28, 2008, defendant, with the assistance of his attorney Erika Cunliffe, filed a third successive postconviction petition and for relief pursuant to section 2-1401 of the Code (735 ILCS 5/2-1401 (West 2008)). In his petition, defendant asserted that: (1) he is actually innocent; (2) the State withheld evidence in violation of Brady, 373 U.S. at 87, 10 L. Ed. 2d at 218, 83 S. Ct. at 1196-97; and (3) trial counsel was ineffective for failing to investigate and call witnesses who could have corroborated his claim of innocence. On October 20, 2008, the circuit court denied defendant leave to file his third postconviction petition and found that defendant failed to advance a claim or defense establishing entitlement to relief under section 2-1401, consequently dismissing the petition. Defendant filed a timely notice of appeal from that

-11-

1-08-3016 and 1-10-0702 (Cons.)

judgment (No. 1-08-3016).

On May 20, 2009, while defendant's appeal was pending, defendant, through current postconviction counsel Professor Andrea Lyon, filed a fourth postconviction petition and a second petition for relief under section 2-1401. In that petition, defendant alleged that: (1) newly discovered evidence supports his claim of actual innocence; (2) the State withheld evidence in violation of Brady, 373 U.S. at 87, 10 L. Ed. 2d at 218, 83 S. Ct. at 1196-97; (3) trial counsel was ineffective for failing to interview Johnell Alexander as a witness; and (4) previous postconviction counsel, Erika Cunliffe, was ineffective where she failed to investigate and interview Johnell Alexander.

On February 17, 2010, the circuit court dismissed defendant's petition under section 2-1401 and denied defendant leave to file his fourth postconviction petition. In the circuit court's 23-page written order, the court explained defendant's allegations of a pattern and practice of abuse as follows:

> "The methods of abuse in [defendant's] attachments are as follows: (1) Smith filed a complaint in 2003, alleging that detectives used 'excessive force' against him; (2) Wiley claimed Foley shouted and cursed at him and told him that he knew who killed these women; (3) Kittler alleged Rajkovich suppressed evidence; (4) Jackson's allegations of abuse are unclear; and (5) McDorman's allegations against McDonald involve his alleged knowledge that another officer was inebriated when he drove into McDorman's car and falsified documents to cover up this fact."

The circuit court found that these allegations were not similar to the allegations presented by

defendant. Specifically, defendant alleged in his petition that on February 19, 1993, he had been detained at Area 1 since the previous day without being informed of his Miranda rights. Defendant alleged that Detective Foley handcuffed him to a chair then slapped defendant in the face, grabbed defendant's throat, and knocked defendant to the ground. Defendant also alleged that Detective Foley told him that if he did not "go along with what was happening," it would only get worse and defendant would receive a "hundred years in prison" if he did not implicate himself in the murder of Rodgers.

The circuit court also held that defendant's allegations of abuse were far too remote to be material. The court noted that defendant's interrogation had taken place in February 1993; whereas, almost all of the incidents contained in defendant's fourth postconviction petition occurred well after defendant's trial had concluded. The court further noted that although Smith's allegations against Detective Foley occurred in 1992, that incident alone would not warrant giving defendant a new trial.

The circuit court further held that even if defendant were to demonstrate that the evidence of a pattern of abuse was material, defendant failed to establish that the evidence was of such a conclusive character that it would probably change the result on retrial. The court explained:

> "If the jury were apprised of the fact that Foley shouted during his interrogation of Wiley, there is scant likelihood they would have decided the issue of [defendant's] guilt differently. Similarly, none of the remaining allegations included in this evidence are specific enough to have damaged the credibility of all four detectives who testified at either [defendant's] suppression hearing or trial or led to the suppression of [defendant's]

statements. Consequently, this evidence is *** not of a conclusive character that it would alter the outcome of [defendant's] trial."

In addition, the circuit court held that Johnell Alexander's affidavit, submitted by defendant in support of his claim of actual innocence, failed to qualify as "newly discovered evidence" and was immaterial to defendant's actual innocence claim. The circuit court explained that Alexander was well known to defendant and Alexander's involvement in the shooting was brought out at trial, primarily as a result of defendant's statement to police. The circuit court also noted that codefendant Willie Hughes' statement, which was available to defendant prior to his trial, further implicated Alexander as the alleged ringleader. The circuit court further explained that the evidence was not material where Alexander maintained that he was not involved in the shooting, he did not order defendant to be a look out, and he was with his girlfriend at the time of the shooting. The circuit court concluded that "Alexander's affidavit of proposed testimony is merely inconsistent with the confession of [defendant] (and Willie Hughes) and would not establish [defendant's] actual innocence."

Defendant filed a timely notice of appeal from the circuit court's order denying defendant leave to file his fourth postconviction petition and dismissing his petition under section 2-1401 (No. 1-10-0702). On May 20, 2010, this court granted defendant's motion to consolidate his appeals in Nos. 1-08-3016 and 1-10-0702.

## II. ANALYSIS

### A. Successive Postconviction Claims

On appeal, defendant contends that the circuit court erred when it denied him leave to file

his successive postconviction petitions where he properly alleged: (1) that the State failed to disclose exculpatory evidence as required by Brady, 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194; (2) he was denied the effective assistance of counsel at trial and during previous postconviction proceedings; and (3) newly discovered evidence demonstrates his actual innocence.

A postconviction proceeding is a collateral proceeding rather than an appeal of the underlying judgment and allows review of constitutional issues that were not, and could not have been, adjudicated on direct appeal. People v. Pitsonbarger, 205 Ill. 2d 444, 455-56 (2002). Successive postconviction petitions are disfavored under the Act and a defendant attempting to institute a successive postconviction proceeding, through the filing of a second or subsequent postconviction petition, must first obtain leave of court. People v. Tidwell, 236 Ill. 2d 150, 157 (2010). Leave to file a successive postconviction petition may only be granted where a defendant "demonstrates cause for his or her failure to bring the claim in his or her initial post-conviction proceedings and prejudice results from that failure." 725 ILCS 5/122-1(f) (West 2008); see also Tidwell, 236 Ill. 2d at 157. Cause may be shown by pleading some objective factor external to the defense that impeded counsel or defendant from timely raising the claim in an earlier proceeding. Pitsonbarger, 205 Ill. 2d at 460. Prejudice is shown when the defendant presents a claim of a constitutional error that so infected his trial that his conviction violated due process. People v. Williams, 392 Ill. App. 3d 359, 366 (2009); People v. Anderson, 375 Ill. App. 3d 990, 1006 (2007).

However, our supreme court has held that the cause and prejudice requirement for a

1-08-3016 and 1-10-0702 (Cons.)

successive postconviction petition is excused when a defendant sets forth a claim of actual

innocence in a successive postconviction petition. People v. Ortiz, 235 Ill. 2d 319, 330 (2009).

In Ortiz, our supreme court held:

> " 'The preclusion doctrines of *res judicata*, collateral estoppel, and law of
>
> the case prevent a defendant from "taking two bites out of the same appellate
>
> apple" ' and avoid " 'piecemeal postconviction litigation.' " People v. Tenner, 206
>
> Ill. 2d 381, 395 (2002) quoting People v. Partee, 125 Ill. 2d 24, 27 (1998). Where
>
> a defendant presents newly discovered, additional evidence in support of a claim,
>
> collateral estoppel is not applicable because it is not the same 'claim.' Tenner,
>
> 206 Ill. 2d at 397-98; [citation]. In the instant case, although defendant's first two
>
> petitions also alleged actual innocence, defendant's third petition presents a new
>
> 'claim' of actual innocence because it offered two additional  eyewitnesses who
>
> were previously unknown to defendant."(Emphasis added.) Ortiz, 235 Ill. 2d at
>
> 332-33.

 Turning to the merits of the petition, we review the denial of defendant's motions for leave to

file a successive postconviction petition *de novo*. People v. LaPointe, 365 Ill. App. 3d 914, 923

(2006), *aff'd,* 227 Ill. 2d 39 (2007).

In order to obtain relief under a theory of actual innocence, the "defendant must show that

the evidence he is relying on (1) is of such conclusive character that it will probably change the

result on retrial; (2) is material to the issue, not merely cumulative; and (3) was discovered since

trial and is of such character that the defendant in the exercise of due diligence could not have

-16-

discovered it earlier." Anderson, 375 Ill. App. 3d at 1006, citing People v. Brockman, 363 Ill. App. 3d 679, 689 (2006), and People v. Orange, 195 Ill. 2d 437, 450-51 (2001).

### 1. Brady Claims

#### a. Pattern of Police Torture and Coercion at Area 1

Defendant first contends that he should have been granted leave to file his successive postconviction petitions where his constitutional right to due process of law and his right to a fair trial were violated when, during his 1993 hearing on his motion to suppress and 1994 trial, the State failed to disclose all exculpatory evidence as required by Brady, 373 U.S. at 87, 10 L. Ed. 2d at 218, 83 S. Ct. at 1196-97. In Brady, the United States Supreme Court held that the prosecution must disclose evidence that is both favorable to the accused and "material either to guilt or to punishment." Brady, 373 U.S. at 87, 10 L. Ed. 2d at 218, 83 S. Ct. at 1196-97; People v. Sanchez, 169 Ill. 2d 472, 485-86 (1996). Evidence is considered "material" if there is "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682, 87 L. Ed. 2d 481, 494, 105 S. Ct. 3375, 3383 (1985); Sanchez, 169 Ill. 2d at 486.

In support of his successive postconviction petitions in the circuit court, defendant cited the Goldston Report and included a list of complaints from witnesses and suspects who alleged physical and psychological abuse at Area 1 headquarters. Defendant submitted a table outlining the complaints of abuse with his appellate brief as "Appendix II." Defendant argues that the evidence outlined in Appendix II, which the State failed to disclose, shows that nine of the Area 1 officers involved in this case had engaged in a pattern and practice of torture and coercion and

-17-

corroborates defendant's allegations of coercion. However, defendant's <u>Brady</u> claim, based on the State's alleged failure to disclose information regarding a pattern and practice of police torture and coercion, has been raised and fully adjudicated.

At trial, defendant moved to suppress the statement he made to police while in custody, arguing that it was coerced and given involuntarily because he was abused by the police officers who interrogated him. Defendant alleged that Detective Foley slapped him in the face twice and grabbed him by the throat, and that Detective McDonald kicked over his chair. The trial court denied defendant's motion, finding no credible evidence of police brutality, and allowed the statement into evidence. On direct appeal, defendant again argued that his statement was involuntary. This court found that the trial court's determination that defendant's statement was voluntary was not against the manifest weight of the evidence and, accordingly, we upheld his conviction. <u>People v. Gillespie</u>, No. 1-94-4135 (June 30, 1997) (unpublished order under Supreme Court Rule 23).

In defendant's amended postconviction petition, filed in January 1999, defendant again alleged that police brutality compelled his confession. Defendant named Detective Foley in his affidavit attached to the amended petition, but did not name any other officer. Defendant's mother, Maxine Franklin, submitted an affidavit alleging that Detective Boudreau prevented her from seeing defendant in the police station. The postconviction court dismissed defendant's amended petition without an evidentiary hearing. On appeal, defendant argued that the postconviction court should have conducted an evidentiary hearing where newly discovered evidence supported his claim that his statement was the result of police coercion and the State

failed to provide the defense with evidence of a pattern and practice of police brutality as required by Brady.

In affirming the dismissal of his petition without an evidentiary hearing, this court held that defendant's postconviction claim of newly discovered evidence to corroborate his claim that his confession was coerced and involuntary was barred by this court's prior dispositional order. People v. Gillespie, No. 1-00-3524 (December 31, 2003) (unpublished order under Supreme Court Rule 23) . Defendant's proffered new evidence in support of his amended petition had included: (1) the Goldston Report, which was part of the OPS investigation into police brutality at Area 2 headquarters; (2) two other men had filed complaints that Detective Foley had kicked and threatened them while they were in custody; (3) there were complaints against one of the other detectives who participated in the investigation of the Rodgers homicide, Detective Boudreau, regarding physical and psychological coercion; (4) portions from a postconviction petition filed in a different criminal case which alleged that four detectives, one of which was Detective Boudreau, engaged in abuse in that case; and (5) codefendant Willie Hughes also alleged police brutality in his motion to suppress statements before his trial.

This court initially noted that defendant relied on the Goldston Report, which was compiled in 1990 and found allegations of abuse in Area 2 to be credible in at least eight cases. This court observed that defendant was held and questioned in Area 1, in February of 1993. This court explained that defendant's amended postconviction petition alleged police coercion but did not name any police officers. Defendant named Detective Foley in his affidavit attached to the amended petition, but did not name any other officer. Defendant's mother, Maxine Franklin,

alleged that Detective Boudreau prevented her from seeing defendant at the police station. However, these allegations had all been adduced during the suppression hearing and during defendant's trial. Thus, this court concluded that this information was not new evidence at all.

With respect to defendant's allegations on appeal that Detectives McDonald, Clancy, and Rajkovich were involved in procuring defendant's confession by coercion, this court noted that defendant did not name any of these detectives in his initial *pro se* or in his amended post conviction petition. While defendant testified during his motion to suppress statements that Detective McDonald kicked his chair, he did not name him at trial. In addition, defendant did not point to any objective factor that prevented him from naming Detectives McDonald, Clancy, and Rajkovich either at trial or in his initial or amended postconviction petitions. Therefore, defendant was not allowed to present these alleged abuses for the first time on appeal of the denial of his amended postconviction petition. See People v. Gosier, 205 Ill. 2d 198, 203 (2001) (" '[A] ruling on a post-conviction petition has *res judicata* effect with respect to all claims that were raised or could have been raised in the initial petition' "), quoting People v. Free, 122 Ill. 2d 367, 375-76 (1988).

This court further found, even assuming *arguendo* that defendant's evidence was new, the evidence of prior police brutality proffered by defendant was insufficient to support the granting of an evidentiary hearing. This court found defendant's reliance on People v. Patterson, 192 Ill. 2d 93 (2000), People v. King, 192 Ill. 2d 189 (2000), and People v. Cannon, 293 Ill. App. 3d 634 (1997), in support of his contention that he was entitled to an evidentiary hearing, to be misplaced. This court explained:

1-08-3016 and 1-10-0702 (Cons.)

"In People v. Orange, 195 Ill. 2d 437 (2001), Orange had been arrested and interviewed by Area 2 detectives in 1984. Orange confessed and was subsequently convicted. The circuit court subsequently dismissed Orange's postconviction petition without an evidentiary hearing. In affirming the dismissal, the supreme court distinguished their holdings in King and Patterson:

'Unlike the present case, the defendants in both of those cases identified or described the officers that had allegedly abused them at Area 2. In those cases, it was also undisputed that the officers involved in the interrogations were also named in the OPS reports as committing acts of physical abuse or failing to stop such abuse. King, 192 Ill. 2d at 198; Patterson, 192 Ill. 2d at 107-08; People v. Patterson, 154 Ill. 2d 414, 440-45 (1992). In contrast, the defendant in the present case, [Orange], did not describe the officers that allegedly had tortured him and did not identify any of the officers at his trial or in his first postconviction petition. Further, the officers who testified at [Orange's] trial that they were responsible for the defendant's interrogation were not named in any of the internal police investigations as having abused suspects.' Orange, 195 Ill. 2d at 460-61. The officers involved in the interrogation of Cannon were similarly named in the OPS reports as committing acts of physical abuse or failing to stop such abuse. Cannon, 293 Ill. App. 3d at 640-41. The facts in the instant case are very similar to those in Orange and are

-21-

1-08-3016 and 1-10-0702 (Cons.)

dissimilar to the facts in <u>Patterson</u>, <u>King</u>, and <u>Cannon</u>. Consequently, we

will apply the analysis in <u>Orange</u> rather than the analyses in <u>Patterson</u>,

<u>King</u>, and <u>Cannon</u>." People v. Gillespie, No. 1-00-3524 slip op. at _____

(December 31, 2003).

This court then cited our supreme court's holding in <u>Hobley II</u>, that the defendant was not

entitled to an evidentiary hearing on his claim that a new trial was warranted because of newly

discovered evidence of police brutality at Area 2, based on the Goldston report and transcripts of

testimony by other persons alleging that they were victims of such police brutality. Our supreme

court explained, "[F]undamental fairness does not require that we relax the *res judicata* bar and

revisit the issue. In order for newly discovered evidence to warrant a new trial, the evidence

must be ' " 'of such conclusive evidence that it will probably change the result on retrial.' " '

<u>Hobley II</u>, 182 Ill. 2d at 449, quoting People v. Silagy, 116 Ill. 2d 357, 368 (1987), quoting

People v. Molstad, 101 Ill. 2d 128, 134 (1984), quoting People v. Baker, 16 Ill. 2d 364, 374

(1959). In defendant's case, this court concluded, "[H]ad the evidence of police brutality

allegations made against detectives at Area 2 between 1973 and 1986 been introduced at

[defendant's] trial, it is not likely that the jury would have concluded that [defendant's]

confession to Area 1 detectives in 1993 was coerced." <u>Gillespie</u>, slip op. at ____. Therefore, this

court concluded that the trial court correctly dismissed defendant's amended postconviction

petition. People v. Gillespie, No. 1-00-3524 (December 31, 2003) (unpublished order under

Supreme Court Rule 23).

Thus, inasmuch as the purpose of the Act is to address issues of constitutional dimension

-22-

that have not and could not have been presented in an earlier proceeding, the doctrine of *res judicata* bars defendant from now revisiting this same issue.  See Patterson, 192 Ill. 2d at 139.

However, defendant now claims that he has discovered new evidence that reveals a pattern of abuse and torture by police officers assigned to investigate the Rodgers murder.  Defendant asserts that this court's decision affirming the dismissal of defendant's amended postconviction petition "was based on different facts than are presented in the petitions that are the subject of this appeal."  Specifically, defendant maintains: "unlike in that decision, the allegations of torture and coercion contained in Appendix II are (1) not unduly remote, many occurred in the same time period as [defendant's] 'interrogation' and (2) are against the same officers, Detectives McDonald, Foley, Clancy, and Rajkovich."  Defendant maintains that had this information been disclosed by the State, it would have substantiated defendant's claim that his inculpatory statement was the product of coercion and that he had nothing to do with the crime.

Our supreme court has recognized that, in the interests of fundamental fairness, the doctrine of *res judicata* may be relaxed if the defendant presents substantial new evidence. Patterson, 192 Ill. 2d at 139.  To merit a new trial, the evidence must be of such conclusive character that it will probably change the result upon retrial; be material and not merely cumulative; discovered since the trial; and of such character that it could not have been discovered prior to trial by the exercise of due diligence.  Patterson, 192 Ill. 2d at 139.

Applying the aforementioned standard, the postconviction courts found defendant's evidence insufficient to relax the procedural bar of *res judicata*.  While defendant previously relied on Patterson in support of his amended postconviction petition, defendant now argues that

the postconviction court erred in applying the Patterson standard to defendant's Brady claim.
Defendant argues that since his trial was in 1994, the postconviction courts should not have
applied the standard under Patterson, which was decided six years later. Defendant
acknowledges that, "The correct analysis, when determining whether knowledge of the pattern
and practice of police torture and coercion would have significantly altered the outcome of
[defendant's] trial, should be confined to what was known to the parties at the time of the trial."

Defendant argues that new evidence, as outlined in Appendix II, shows that four officers
involved in defendant's interrogation (Detectives Foley, McDonald, Clancey, and Rajkovich)
were implicated in allegations of torture, coercion, and misconduct. Defendant asserts that this
evidence also includes allegations against other Area 1 officers (Paladino, O'Brien, Boudreau,
and Halloran) and "there is no way of absolutely knowing that these other officers also did not
play a role in eliciting the false statement from [defendant]." However, only two examples cited
by defendant to show a pattern and practice of abuse could have been known to the State at the
time of defendant's trial.

First, a 1991 incident involving Detective Boudreau, in which he was reprimanded for
failing to have a youth officer in the interrogation room, as required when questioning a juvenile
suspect. Defendant submitted a Chicago Tribune article, written on December 17, 2001, which
included information about this incident and other allegations of abuse and misconduct against
Detective Boudreau. Even if the State were aware of Detective Boudreau's 1991 reprimand, it is
unclear why the State had a duty to disclose this information under Brady. Defendant has not
alleged that Detective Boudreau was involved in defendant's interrogation and defendant's

successive postconviction petitions did not name Detective Boudreau in his allegations of police brutality. Further, Detective Boudreau's reprimand did not involve similar methods of abuse as alleged by defendant. Therefore, this evidence could not be deemed material to defendant's allegations that police brutality compelled his confession.

Second, defendant cites allegations by Howard Wiley that, on December 3, 1985, he voluntarily accompanied police officers to Area 3 headquarters to discuss a triple homicide, where Detective Foley shouted, cursed, and spit at him. Wiley also alleged that another detective threatened to arrest his wife in connection with the homicide. Wiley's allegations are contained on his personal homepage on the web site for The Canadian Coalition Against the Death Penalty (CCADP). According to the web site, "the CCADP has offered free webspace to over 1,000 Death Row Prisoners since 1998." Thus, it is unclear whether the State would have known of Wiley's allegations at the time of defendant's 1994 trial. Even if this evidence was known to the State at the time of defendant's trial and the jury was apprised of the allegations that Detective Foley shouted, cursed, and spit at Wiley, there is scant likelihood it would have decided the issue of defendant's guilt differently. Therefore, there is no reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. See United States v. Bagley, 473 U.S. 667, 682, 87 L. Ed. 2d 481, 494, 105 S. Ct. 3375, 3383 (1985); Sanchez, 169 Ill. 2d at 486.

We further note that defendant's fourth postconviction petition is barred by *res judicata* where defendant's allegations of police torture and coercion have been raised and fully adjudicated. The brutality issue was raised and rejected on direct appeal. Defendant's amended

-25-

postconviction petition, filed in January 1999, raised the same issue with no new evidence.

Defendant subsequently filed a third successive postconviction petition, which the circuit court

properly denied leave to file. Defendant's fourth postconviction petition merely added two other

allegations of brutality in other cases involving Detectives Boudreau and Foley. As previously

explained, these two other allegations do not provide a sufficient basis to believe the result of the

proceedings would have been different. Accordingly, defendant's fourth postconviction petition

is barred by *res judicata*. Gosier, 205 Ill. 2d at 203 (" '[A] ruling on a post-conviction petition

has a *res judicata* effect with respect to all claims that were raised or could have been raised in

the initial petition' "), quoting Free, 122 Ill. 2d at 375-76.

### b. Johnell Alexanders' Statement

Defendant also contends that the State violated the Brady rule by failing to disclose that

Johnell Alexander ("KB") provided a pretrial statement to police in which he denied

participation in the homicide. In support of his argument, defendant attached an affidavit from

Alexander in which Alexander stated that he did not organize a meeting or plan the shooting of

Rodgers. Alexander stated that on the day of the shooting, he was with his girlfriend at 68th and

Wood Street. Alexander stated that he was interviewed by Detective Boudreau regarding the

Rodgers shooting and provided the detective with his alibi. Alexander also told the detective that

any testimony in defendant's case implicating Alexander in the shooting was false. After

Alexander was not identified in police lineups, Alexander was released from custody and not

charged with the shooting. Alexander also testified during the successive postconviction

proceedings that his affidavit was true.

Defendant argues that Alexander's statement undermines the State's theory of the case that Alexander orchestrated the shooting and directed defendant to be the lookout. Defendant asserts that Alexander's statement is newly discovered evidence that shows that defendant's statement was the result of police torture and coercion. Defendant maintains that the failure to disclose Alexander's statement was "the most serious Brady violation" in defendant's case.

We find that Alexander's affidavit is not "newly discovered" evidence that establishes defendant's actual innocence. "[E]vidence is not 'newly discovered' when it presents facts already known to the defendant at or prior to trial, though the sources of those facts may have been unknown, unavailable or uncooperative." People v. Barnslater, 373 Ill. App. 3d 512, 523 (2007); see also People v. Collier, 387 Ill. App. 3d 630, 637 (2008). Unlike the situation in Ortiz, this witness was not "previously unknown to defendant." see Ortiz, 235 Ill. 2d at 333. Rather, defendant was aware of Alexander prior to trial. Defendant acknowledged in his court-reported statement that Alexander was in charge of the Gangster Disciples in his neighborhood and responsible for directing members of the gang and assigning security positions. Defendant also stated that Alexander directed him to his security post during the Rodgers murder. While defendant testified at trial that his court-reported statement was false, defendant also testified that he met Alexander around the corner from the scene of the murder within minutes of it occurring. Defendant testified that Alexander told him about the Rodgers murder and directed defendant to go home. Consequently, Alexander was clearly known to defendant at the time of his trial as well as when defendant filed his initial and amended postconviction petitions.

Further, while Alexander's affidavit exculpates Alexander from the shooting, it does not

exculpate defendant. Alexander denied being involved in planning or carrying out the shooting. However, Alexander's self-serving statement would not have cast doubt on defendant's inculpatory statement. See Anderson, 375 Ill. App. 3d at 1007, quoting People v. Smith, 141 Ill. 2d 40, 73 (1990). ("[I]n respect to the Patterson pleading, self-serving documents prepared in anticipation of litigation 'generally lack the earmarks of trustworthiness and reliability' ").

Defendant further asserts that "[W]hile the State argues that Mr. Alexander's statement is at odds with [defendant's] testimony at trial *on a minor detail*, it is within the province of the jury to resolve such discrepancies." However, Alexander's alibi directly contradicted defendant's own trial testimony that he met with Alexander on the night of the murder and Alexander told defendant about the shooting, then advised defendant that he should go home. This can hardly be deemed a minor detail in this case. We find defendant's proffered evidence regarding Alexander's statement does not constitute new evidence to support defendant's claim of a Brady violation.

### 2. Ineffective Assistance of Counsel Claims

In his successive postconviction petitions, defendant also makes the related argument that he was denied effective assistance of trial counsel where counsel failed to contact Alexander, who would have offered testimony at trial to bolster defendant's claim that he was not involved in the Rodgers murder.

To prevail on a claim asserting that trial counsel was not effective, a defendant must first establish that "counsel's representation fell below an objective standard of reasonableness." Strickland v. Washington, 466 U.S. 668, 688, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064

(1984). If a defendant establishes that defense counsel's representation fell below an objective standard of reasonableness, a defendant must then demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068. A defendant must satisfy both prongs of the Strickland test before he can prevail on a claim of ineffective assistance of counsel. However, if the ineffective assistance claim can be disposed of on the ground that the defendant did not suffer prejudice, a court need not determine whether counsel's performance was constitutionally deficient. People v. Mahaffey, 194 Ill. 2d 154, 175 (2000).

Here, defendant has not shown that he suffered any prejudice from his trial counsel's alleged failure to call Alexander as a witness. "[A] particular decision not to investigate must be directly assessed for reasonableness in all circumstances, applying a heavy measure of deference to counsel's judgments." Strickland, 466 U.S. at 691, 80 L. Ed. 2d at 695, 104 S. Ct. at 2052. As previously explained, Alexander's statement does not exculpate defendant or make it more likely that defendant's statement was the product of torture and coercion.

Furthermore, trial counsel could have reasonably chosen not to call Alexander as a witness at trial. Trial counsel could have strategically decided that calling Alexander, the alleged leader of a street gang, to testify would have provided little benefit to defendant's case. Alexander's alibi also directly conflicted with defendant's trial testimony that defendant met with Alexander following the shooting. Moreover, trial counsel argued during closing arguments that defendant's statement was provided under duress and "not corroborated by the known evidence."

Specifically, trial counsel argued that according to defendant's statement, Alexander was the gang leader who directed the shooting, but "John L. Alexander is conspicuously missing" from the indictment and the State's case presented against defendant. Had trial counsel called Alexander as a witness at trial, counsel would not have been able to attack the State's case based on the fact that the details regarding Alexander provided in defendant's statement were not corroborated at trial. Defendant therefore cannot satisfy the objective reasonableness prong of the Strickland test to prevail on his claim of ineffective assistance of trial counsel.

Defendant next challenges the performance of his previous postconviction counsel, Erika Cunliffe. Defendant contends that postconviction counsel did not comply with Supreme Court Rule 651(c) (134 Ill. 2d R. 651(c)) in that counsel failed to review the trial records and locate Alexander as a witness.

It is well settled that the Act requires only a reasonable level of assistance by counsel during postconviction proceedings. People v. Moore, 189 Ill. 2d 521, 541 (2000). In order to assure that reasonable level of assistance, Supreme Court Rule 651(c) requires that the record in postconviction proceedings disclose that counsel "has consulted with petitioner either by mail or in person to ascertain his contentions of deprivation of constitutional rights, has examined the record of the proceedings at the trial, and has made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions." 134 Ill. 2d R. 651(c). However, counsel has no duty under Rule 651(c) to locate witnesses not specifically identified by the petitioner or to conduct an investigation to discover the identity of witnesses who would provide evidence to support a claim in the postconviction petition. Moore, 189 Ill. 2d at 541.

1-08-3016 and 1-10-0702 (Cons.)

Here, the record shows that postconviction counsel complied with Rule 651(c).  After counsel was assigned to represent defendant, she filed a motion requesting that this court dismiss defendant's postconviction appeal without prejudice because she needed additional time to review other evidence.  This court granted counsel's motion.  Counsel then filed an amended postconviction petition and a successive postconviction petition, raising several constitutional errors, including the State's alleged Brady violation, trial counsel's ineffectiveness, and defendant's claim of actual innocence.  Counsel also attached affidavits in support of these claims.  We find that postconviction counsel's actions did not fall below the reasonable level of assistance required by Rule 651(c).

### 3.  Claim of Actual Innocence

Defendant next contends that he should be allowed to present his successive postconviction petition because he is asserting a freestanding claim of actual innocence based on newly discovered evidence consisting of five affidavits that demonstrate defendant was not involved in the Rodgers murder.

As already noted above, to obtain relief under a theory of actual innocence, the "defendant must show that the evidence he is relying on (1) is of such conclusive character that it will probably change the result on retrial; (2) is material to the issue, not merely cumulative; and (3) was discovered since trial and is of such character that the defendant in the exercise of due diligence could not have discovered it earlier."  Anderson, 375 Ill. App. 3d at 1006, citing People v. Brockman, 363 Ill. App. 3d 679, 689 (2006), and People v. Orange, 195 Ill. 2d 437, 450-51 (2001).

As previously discussed, Alexander's statement indicated that Alexander did not organize the murder of Rodgers, Alexander did not order defendant to be a look out, and Alexander was with his girlfriend when the shooting occurred. Alexander's statement does not provide any new evidence to corroborate defendant's allegations that his statement was the result of police coercion. Defendant knew of Alexander prior to trial. Accordingly, Alexander's statement cannot constitute "newly discovered evidence" of his actual innocence. Barnslater, 373 Ill. App. 3d at 523.

The second affidavit upon which defendant relies was provided by Willie Wilson, who stated that he planned and carried out the Rodgers murder with the assistance of Jeffrey Clarkson and an individual named "Eric." Wilson stated that defendant was not involved in the Rodgers murder and was not at the beauty shop during the shooting. Similarly, the third affidavit, from Jeffrey Clarkson, stated that Clarkson and two other individuals committed the murder and defendant was not involved in the shooting. However, these statements are consistent with defendant's inculpatory statement that he served as a look out down the street from the beauty shop and was not inside the shop during the shooting. These statements are not of such a conclusive character that they would probably change the result on retrial.

Defendant also relies on a fourth affidavit, from Gerald Earl, in which Earl stated that "to the best of his knowledge," defendant was not involved in the murder. Earl also stated that he had nothing to do with the murder and was not present when the shooting occurred. Similarly, the fifth affidavit, from Willie Lee Hughes, stated that he was wrongly convicted for the shooting at the beauty shop and that he was not present when the shooting occurred. Hughes also stated

that he was not aware of the meeting that took place to organize the shooting and he did not tell defendant to be a look out on the night in question. This evidence is not material where both men deny any involvement in the beauty shop murder and claim that they were not present when the shooting occurred. Such self-serving documents would not have cast doubt on defendant's inculpatory statement. See Anderson, 375 Ill. App. 3d at 1007. These affidavits merely affirm that neither of these individuals has any personal knowledge concerning the Rodgers murder and, therefore, cannot support defendant's claim of actual innocence.

B. Section 2-1401 Petitions

Lastly, we reject defendant's alternative argument that the circuit court improperly dismissed his petitions for relied pursuant to section 2-1401 of the Code (735 ILCS 5/2-1401 (West 2008)). Defendant's petitions for relief under section 2-1401 presented the identical claims as his successive postconviction petitions: (1) the State withheld exculpatory information in violation of Brady v. Maryland, 373 U.S. 83, 87, 10 L. Ed. 2d 215, 218, 83 S. Ct. 1194, 1196-97 (1963); (2) he was denied the effective assistance of counsel for failing to investigate and call a key witness; and (3) he is actually innocent.

"A section 2-1401 petition for relief from a final judgment is the forum in a criminal case in which to correct all errors of fact occurring in the prosecution of a cause, unknown to petitioner and the court at the time judgment was entered, which, if then known, would have prevented its rendition." Mahaffey, 194 Ill. 2d at 181. However, where a section 2-1401 petition is filed more than two years after the judgment was entered, it cannot be considered. 735 ILCS 5/2-1401(c) (West 2008). It is well established that the two-year limitation period mandated by

1-08-3016 and 1-10-0702 (Cons.)

section 2-1401 must be adhered to in the absence of a clear showing that the person seeking relief is under legal disability or duress or the grounds for relief are fraudulently concealed. Mahaffey, 194 Ill. 2d at 181-82.

Defendant's section 2-1401 petitions were filed on July 28, 2008 and May 20, 2009, over 14 and 15 years since judgment was entered against him in this matter. Defendant does not specifically argue that any of the grounds for tolling the limitations period exist. Therefore, section 2-1401 is not available as a remedy. Mahaffey, 194 Ill. 2d at 181-82. In addition, even if defendant's section 2-1401 petition had been timely filed, as explained above with respect to the identical claims made in defendant's successive postconviction petitions, defendant has failed to establish a meritorious claim. Accordingly, the circuit court appropriately dismissed defendant's petitions for relief pursuant to section 2-1401.

### III. CONCLUSION

For the above reasons, we affirm the judgments of the circuit court.

Affirmed.

MURPHY and STEELE, JJ., concur.