NOTICE
This Order was filed under
Supreme Court Rule 23 and
is not precedent except in the
limited circumstances
allowed under Rule 23(e)(1).

2021 IL App (4th) 200201-U

NO. 4-20-0201

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
November 1, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Livingston County |
| MARK A. WINGER, | ) | No. 06CF44 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jennifer H. Bauknecht, |
| | ) | Judge Presiding. |

JUSTICE TURNER delivered the judgment of the court.
Presiding Justice Knecht and Justice Steigmann concurred in the judgment.

**ORDER**

¶ 1     *Held*: The circuit court properly denied defendant leave to file a successive
postconviction petition.

¶ 2     In February 2020, defendant, Mark A. Winger, filed *pro se* his motion for leave to file his "first" successive postconviction petition. In his motion, he asserted (1) an actual innocence claim, (2) an ineffective assistance of counsel claim, (3) denial of the ability to raise a defense of entrapment, and (4) a violation of *Brady v. Maryland*, 373 U.S. 83 (1963). In April 2020, the Livingston County circuit court denied defendant's motion, finding defendant failed to satisfy the cause-and-prejudice test.

¶ 3     Defendant appeals, contending he made a *prima facie* showing of cause and prejudice regarding his *Brady* violation claim. We affirm.

¶ 4                    I. BACKGROUND

¶ 5         In February 2006, the State charged defendant by information with two counts of solicitation of murder (720 ILCS 5/8-1.1(a) (West 2004)).  The State alleged defendant, with the intent the offense of first degree murder be committed upon DeAnn Anderson (count I) and Jeffrey Gelman (count II), requested Terry Hubbell arrange for a third person or persons to commit the first degree murder of Anderson and Gelman.

¶ 6         In June 2007, the trial court commenced defendant's jury trial on the solicitation charges.  At the time of trial, defendant was serving a life sentence at Pontiac Correctional Center for his 2002 convictions for murdering his wife and another man in Sangamon County.  *People v. Winger*, 347 Ill. App. 3d 1127, 867 N.E.2d 127 (2004) (table) (unpublished order under Illinois Supreme Court Rule 23).  Hubbell testified he was serving a life sentence at Pontiac Correctional Center for a 1992 conviction for murder and met defendant in prison.  In May and June 2005, defendant approached Hubbell in the recreation yard and mentioned his desire "to get rid of the witness in this case."  Defendant named the witness as DeAnn Anderson or Shultz.  Hubbell initially ignored it "because everybody that is in prison pretty well says they would like to get rid of a witness in their case."  Hubbell stated the issue came up "repeatedly" and he eventually contacted a private investigator who worked on his case.  Hubbell hoped to receive consideration for himself.  In June 2005, Hubbell received a written plan from defendant, setting forth defendant's idea to have something done to Anderson.  Hubbell was supposed to look over the document and return it to defendant.  Hubbell gave the original to a correctional officer, and it was later returned to Hubbell.

¶ 7         Hubbell further testified Special Agent Peter Buckley of the Federal Bureau of Investigation (FBI) and Special Agent Casey Payne of the Illinois State Police later approached Hubbell and inquired about him wearing a device to record his conversations with defendant.

Hubbell agreed and wore the concealed audio-recording device while he engaged in conversation with defendant in the recreation yard. The recording of the conversation was played for the jury, and a transcript was also provided. Hubbell testified the recorded conversation concerned "[k]illing Deann Anderson and Gelman, Jeff Gelman and his family." Further, Hubbell understood defendant's document to be "the directions of how it was supposed to happen."

¶ 8        Edward Vilt, a correctional officer at Pontiac Correctional Center, testified Hubbell approached him in May and June 2005. Hubbell produced approximately 20 pages of handwritten notes allegedly authored by defendant. Vilt made copies and returned the original to Hubbell.

¶ 9        Buckley testified he was assigned to this case in May 2005. Thereafter, he contacted Anderson and Gelman about the possible threats. Buckley then obtained Hubbell's consent to place a recording device on his person to record conversations with defendant. Sometime after the overhear conversation, Buckley met with defendant in a prison interview room. Defendant indicated he thought Buckley wanted to talk about Anderson's possible involvement in defendant's original murder case. When defendant discovered that was not the intent of the meeting, he stated he had nothing more to say. He did comment there were "some people that he wished would not wake up in the morning" and that "so many things go against a man, that a man has to do what a man has to do."

¶ 10        Payne testified for the defense. She stated the FBI signed on Hubbell as a cooperating witness. Hubbell wanted his mother's telephone bill paid and a transfer to another prison where he could obtain a job. Payne testified Hubbell received a transfer to a different prison and was paid money. When asked about the amount of money, she indicated Buckley would know that. Buckley testified that, while no money was paid directly to Hubbell, the FBI

paid $3250 on Hubbell's behalf.

¶ 11     Defendant testified in his own defense. He met Hubbell in prison in November 2004. Defendant admitted writing the document, stating it was an "iterative process" of fantasy bandied about the recreation yard. He stated it took him five months to write the 19 pages of material but he never intended for it to be taken as a serious plan of action. Instead, defendant stated he wrote it to "[p]ass the time" and to release his anger and bitterness at being wrongfully convicted. Defendant further testified he knew Jeff Gelman but was not angry at him for not posting bond for defendant. Defendant stated he did not want Anderson or Gelman to be murdered. Defendant claimed Hubbell was "scamming" him, but defendant could not confront him because Hubbell was "extremely dangerous." Defendant also stated he never gave any money or anything of value to Hubbell in furtherance of any solicitation of a crime.

¶ 12     On cross-examination, defendant testified Gelman was a wealthy man and Anderson was an important witness in his murder trial. He knew a recantation claim from her would be important to him personally, although courts find recantations inherently unreliable. Defendant claimed Hubbell "outsmarted" him with details from defendant's life.

¶ 13     Following closing arguments, the jury found defendant guilty on both counts. In July 2007, defendant filed a motion for a new trial and other posttrial relief, which the trial court denied. Thereafter, the court sentenced defendant to concurrent 35-year prison terms on each count, with both counts to run concurrently with his murder conviction from Sangamon County. Defendant appealed, and this court affirmed his convictions and sentences. *People v. Winger*, 385 Ill. App. 3d 1150, 970 N.E.2d 137 (2008) (table) (unpublished order under Illinois Supreme Court Rule 23).

¶ 14     In April 2009, defendant filed a *pro se* petition for postconviction relief under the

Post-Conviction Hearing Act (Postconviction Act) (725 ILCS 5/122-1 *et seq.* (West 2008)) and for relief from judgment under section 2-1401(c) of the Code of Civil Procedure (735 ILCS 5/2-1401(c) (West 2008)). In July 2009, the trial court found defendant's postconviction petition was frivolous and patently without merit and dismissed it. The court also dismissed the petition for section 2-1401 relief. Defendant appealed the dismissal of his postconviction petition, and this court affirmed the dismissal. *People v. Winger*, 405 Ill. App. 3d 1219, 997 N.E.2d 1018 (2011) (table) (unpublished order under Illinois Supreme Court Rule 23).

¶ 15    In February 2020, defendant filed his *pro se* motion for leave to file his first successive postconviction petition. Along with his motion, defendant filed (1) a proposed successive postconviction petition, (2) a supporting memorandum, and (3) supporting exhibits. In his materials, defendant asserted actual innocence, ineffective assistance of counsel, and denial of the ability to raise a defense of entrapment, and a *Brady* violation. The *Brady* violation claim alleged Hubbell and the State had a deal that was not disclosed to defendant. In support of that assertion, he provided the affidavit of Paul Blake, an inmate at the Pontiac Correctional Center when defendant was there. In his affidavit, Blake stated, about a year after he last saw defendant and Hubbell, he inquired about defendant. Blake was told defendant was at Tamms Correctional Center and Hubbell had made a deal for time cut or time served in exchange for wearing the wire. In his supporting memorandum, defendant explained he was approached by Blake in the prison law library in November 2019. According to defendant, Blake told him Hubbell had been released from prison. Blake explained the State modified Hubbell's natural life sentence to a determinate sentence and then released him sometime after Hubbell testified at defendant's 2007 trial. Defendant asked Blake for an affidavit about what he knew regarding Hubbell's release, which Blake provided. Defendant also asked his brother to search for Hubbell

on the Department of Corrections website. His brother told defendant Hubbell was no longer in prison in Illinois.

¶ 16         On April 8, 2020, the trial court entered a written order denying defendant's motion for leave to file his first successive postconviction petition. The court found defendant's only "new evidence" was jailhouse rumors and innuendos. It further noted defendant failed to (1) explain why he did not raise the evidence earlier and (2) show the new evidence would have changed the result at trial.

¶ 17         On April 21, 2020, defendant timely filed a notice of appeal in sufficient compliance with Illinois Supreme Court Rule 606 (eff. July 1, 2017). See Ill. S. Ct. R. 651(d) (eff. July 1, 2017) (providing the procedure for appeals in postconviction proceedings is in accordance with the rules governing criminal appeals). Thus, we have jurisdiction of defendant's appeal under Illinois Supreme Court Rule 651(a) (eff. July 1, 2017).

¶ 18                              II. ANALYSIS

¶ 19         On appeal, defendant challenges the circuit court's denial of his first request for leave to file a successive postconviction petition. When the circuit court has not held an evidentiary hearing, this court reviews *de novo* the denial of a defendant's motion for leave to file a successive postconviction petition. See *People v. Gillespie*, 407 Ill. App. 3d 113, 124, 941 N.E.2d 441, 452 (2010).

¶ 20         The Postconviction Act (725 ILCS 5/122-1 *et seq.* (West 2020)) contemplates the filing of only one postconviction petition. *People v. Bailey*, 2017 IL 121450, ¶ 15, 102 N.E.3d 114. Specifically, section 122-3 of the Postconviction Act (725 ILCS 5/122-3 (West 2020)) declares "[a]ny claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived." Section 122-1(f) of the Postconviction Act (725 ILCS 5/122-1(f)

(West 2020)) represents an exception to the waiver rule. See *Bailey*, 2017 IL 121450, ¶ 15. It provides the following:

> "Only one petition may be filed by a petitioner under this Article without leave of the court. Leave of court may be granted only if a petitioner demonstrates cause for his or her failure to bring the claim in his or her initial post-conviction proceedings and prejudice results from that failure. For purposes of this subsection (f): (1) a prisoner shows cause by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings; and (2) a prisoner shows prejudice by demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." 725 ILCS 5/122-1(f) (West 2020).

Thus, for a defendant to obtain leave to file a successive postconviction petition, both prongs of the cause-and-prejudice test must be satisfied. *People v. Guerrero*, 2012 IL 112020, ¶ 15, 963 N.E.2d 909.

¶ 21 With a motion for leave to file a successive postconviction petition, the court is just conducting "a preliminary screening to determine whether defendant's *pro se* motion for leave to file a successive postconviction petition adequately alleges facts demonstrating cause and prejudice." *Bailey*, 2017 IL 121450, ¶ 24. The court is only to ascertain "whether defendant has made a *prima facie* showing of cause and prejudice." *Bailey*, 2017 IL 121450, ¶ 24. If the defendant did so, the court grants the defendant leave to file the successive postconviction

petition. *Bailey*, 2017 IL 121450, ¶ 24. In conducting the preliminary screening, our supreme court has held the State should not be allowed to participate. *Bailey*, 2017 IL 121450, ¶ 24.

¶ 22 On appeal, defendant asserts he made a *prima facie* showing of cause and prejudice for his *Brady* violation claim. Even if defendant made a *prima facie* showing of cause, he did not make a *prima facie* showing of prejudice.

¶ 23 In *Brady*, 373 U.S. at 87, the United States Supreme Court held the prosecution violates a defendant's constitutional right to due process of law by failing to disclose upon request evidence favorable to the defendant and material to guilt or punishment. For a defendant to establish a claim under *Brady*, he or she must show the following: "(1) the undisclosed evidence is favorable to the accused because it is either exculpatory or impeaching; (2) the evidence was suppressed by the State either wilfully or inadvertently; and (3) the accused was prejudiced because the evidence is material to guilt or punishment." *People v. Beaman*, 229 Ill. 2d 56, 73-74, 890 N.E.2d 500, 510 (2008).

¶ 24 The State contends, assuming the State failed to disclose impeachment evidence regarding Hubbell, defendant cannot show he was prejudiced by the nondisclosure because the evidence was not material to defendant's guilt. The State notes the defense counsel elicited significant impeachment evidence from Hubbell during cross-examination and the evidence of defendant's guilt was overwhelming. At defendant's trial, the evidence included a lengthy handwritten note by defendant setting forth his plan to get rid of Anderson who testified against him at his murder trial. The note also made mention of Gelman. Additionally, the State presented a recorded conversation between defendant and Hubbell, during which defendant discussed his plan to kill Anderson by kidnapping Gelman and using the money to pay for the hit on Anderson. Further, Buckley testified he met with defendant in prison after the recorded

conversation, and defendant commented there were "some people that he wished would not wake up in the morning" and "so many things go against a man, that a man has to do what a man has to do." Given the aforementioned evidence, we disagree with defendant Hubbell's testimony was the only direct evidence implicating defendant in the solicitation plot. The jury could have found Hubbell not credible but still found defendant guilty. Thus, we agree with the State defendant cannot show he was prejudiced by the alleged undisclosed deal with Hubbell because it was not material to his guilt.

¶ 25 Accordingly, we find the trial court properly denied defendant's motion for leave to file his first successive postconviction petition.

¶ 26                                III. CONCLUSION

¶ 27 For the reasons stated, we affirm the Livingston County circuit court's denial of defendant's motion for leave to file his first successive postconviction petition.

¶ 28 Affirmed.