NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2021 IL App (4th) 190166-U

NO. 4-19-0166

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 26, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Macon County |
| CORNELIUS L. JONES, | ) | No. 08CF1053 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jeffrey S. Geisler, |
| | ) | Judge Presiding. |

_____

JUSTICE TURNER delivered the judgment of the court.
Presiding Justice Knecht and Justice Steigmann concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The circuit court did not err by denying defendant's petition for leave to file a
successive postconviction petition.

¶ 2    In October 2018, defendant, Cornelius L. Jones, filed a *pro se* motion for leave to
file a successive postconviction petition. In his motion, defendant asserted he did not receive
effective assistance of counsel because trial counsel failed to interview and call to testify his
codefendant, Dorian Harris, who was a State witness. Defendant contended he could not have
raised the claim earlier because Harris was reluctant in providing an affidavit. In January 2019,
the Macon County circuit court entered an order denying defendant's motion for leave to file a
successive postconviction petition.

¶ 3    Defendant appeals, contending he did set forth a *prima facie* case of cause and
prejudice related to his allegation his counsel provided ineffective assistance of counsel by

failing to interview and present Harris's testimony. We affirm.

¶ 4                                    I. BACKGROUND

¶ 5          In July 2008, the State charged defendant and Harris by information with six counts of first degree murder (720 ILCS 5/9-1(a)(1), (a)(2) (West 2008)) in connection with the July 23, 2008, death of Benny Topps. In January 2009, the circuit court held defendant's jury trial on three counts of first degree murder. The evidence relevant to the issue on appeal follows.

¶ 6          Terry Bond, a friend of Benny, testified that, on July 23, 2008, a man with dreadlocks came to the mechanic shop where he and Benny worked and asked to speak with Benny. Benny walked out with the man. When the men reached a nearby alley, Bond saw the man with the dreadlocks raise "a shiny object in his hand." Bond then heard a shot and then 8 to 10 more shots. Bond then went out and saw Benny lying in the alley. Bond did not observe anything around the area where Benny was lying. He did not see a weapon. Bond identified defendant as the man with the dreadlocks.

¶ 7          Joe Gipson testified he was at the mechanic shop helping Benny work on cars on July 23, 2008. He saw a male exit a Cadillac and motion to Benny to come over to him. Gipson saw Benny walk outside without anything in his hands. Gipson told Benny not to go because he saw the man had a gun in his hand. Benny told Gipson not to worry about it and " 'I got this.' " Gipson saw Benny and the man stand and talk at the back of the car. Benny turned around to walk away when Gipson heard a gunshot. Benny fell, and "the dude came up and finished shooting him."

¶ 8          Lieutenant Topps, Benny's brother, testified he and Benny agreed to pick up cocaine for defendant. Benny traveled to Texas with $45,000 from defendant but returned without any cocaine or money. Upon Benny's return, Lieutenant described Benny as being

nervous. Lieutenant and his brother discussed giving defendant several vehicles to replace the lost money.

¶ 9        Illinois State Police Trooper Anthony Maro testified he heard a communication about a shooting in Decatur and the possible suspect vehicle was a gold Cadillac occupied by a black male with dreadlocks. At approximately 10:40 a.m., Maro executed a traffic stop of a gold Cadillac occupied by two males. An interior inspection of the car revealed "a live round and a spent shell casing on the passenger seat." He also found a black duffel bag containing a dreadlocks wig and a handgun.

¶ 10        Dr. John Ralston, a forensic pathologist, testified he performed Benny's autopsy. Dr. Ralston observed 10 wounds on the body. He stated the "entrance wounds were located posturally on his back," with the possible exception of a wrist wound.

¶ 11        Defendant testified in his own defense and admitted he had a prior conviction for drug trafficking with a firearm. Benny and Lieutenant were his step-uncles. When Benny came to defendant's mother's house on previous occasions, defendant saw him with a weapon "[a]ll the time." Defendant further testified his whole family saw Benny carrying a gun every time he drove a truck and identified four relatives by name. Defendant denied talking with Benny about a drug deal, but they did talk about a person in Decatur selling a backhoe. Defendant gave Benny $34,000 in cash to purchase the backhoe. After Benny did not make the purchase, he refused to return defendant's money. Defendant stated Benny threatened him if he came looking for his money.

¶ 12        On July 23, 2008, defendant and Harris drove to Decatur in a Cadillac, and defendant brought a gun to protect himself. He stated he kept his dreadlocks hat in the car with him to wear "every now and then." Defendant wore the hat when he found Benny in the garage.

Defendant carried his gun because of Benny's prior threat. They then walked to the Cadillac to talk because defendant was concerned about the presence of others in the garage. Defendant stated Benny was "mad and pissed off" and looked behind defendant "like somebody was walking up behind [defendant]." This made defendant nervous. Defendant looked back, and when he turned around, Benny "looked like he was trying to reach for something." Defendant thought he was reaching for a gun. Defendant got scared and shot Benny. When asked by defense counsel if he ever saw a gun, defendant stated that after the shooting, Benny fell and something "tumbled to the ground." If defendant had seen a cellular phone in Benny's hand, he "probably would have" shot him because of the "way he was reacting." Defendant shot Benny until he felt "he wasn't able to do nothing to [him]." Defendant stated Benny was "trying to take off running after [he] started shooting him." After the shooting, defendant "[h]opped in the car" and left. During a police interview after the shooting, defendant denied killing Benny. He also did not tell police that Benny owed him money or that he came to Decatur to talk about the backhoe. On cross-examination, defendant testified he did not see Benny with a gun prior to the shooting.

¶ 13    Following closing arguments, the jury found defendant guilty of first degree murder. The jury also found defendant personally discharged a firearm that proximately caused the death of another during the commission of the offense. At a February 2009 sentencing hearing, the trial court denied the posttrial motion. The court then sentenced defendant to 35 years in prison for the offense of first degree murder, along with an additional 25-year enhancement for personally discharging a firearm that proximately caused the death of another person.

¶ 14    On direct appeal, defendant argued (1) the trial court abused its discretion in

refusing to instruct the jury on self-defense and (2) the State improperly shifted the burden of proof during closing argument. This court affirmed defendant's conviction and sentence, finding the trial court did not abuse its discretion in denying defendant's requested self-defense instruction because the evidence indicated defendant was the initial aggressor and the danger of harm was not imminent. *People v. Jones*, 393 Ill. App. 3d 1115, 985 N.E.2d 729 (2009) (table) (unpublished order under Supreme Court Rule 23). This court declined to address the other issue because defendant did not raise it in his postjudgment motion. *Jones*, 393 Ill. App. 3d 1115, 985 N.E.2d 729.

¶ 15        In March 2011, defendant filed a *pro se* petition for postconviction relief pursuant to the Post-Conviction Hearing Act (Postconviction Act) (725 ILCS 5/122-1 *et seq.* (West 2010)). Therein, defendant alleged, *inter alia*, his counsel on direct appeal provided ineffective assistance when he failed to argue the prosecutorial misconduct claim should be reviewed as plain error and trial counsel was ineffective for failing to present any mitigating evidence at sentencing, even though defendant had informed him about available witnesses. The circuit court summarily dismissed defendant's petition. Defendant filed a motion to reconsider, which the court denied in October 2012. On appeal, this court affirmed the summary dismissal of defendant's original postconviction petition. *People v. Jones*, 2014 IL App (4th) 121038-U.

¶ 16        In November 2014, defendant filed a *pro se* motion for leave to file a successive postconviction petition. See 725 ILCS 5/122-1(f) (West 2014). In his proposed postconviction petition, defendant claimed (1) he was denied due process when the trial court denied his motions to suppress, (2) trial counsel was ineffective for not preserving the suppression issue for appeal, and (3) direct appeal counsel was ineffective for not raising the suppression issue as plain error. In December 2014, the circuit court denied defendant's motion for leave to file a

- 5 -

successive postconviction petition. Defendant appealed, and this court affirmed the circuit court's denial of leave to file a successive postconviction petition. *People v. Jones*, 2017 IL App (4th) 141114-U.

¶ 17         In October 2018, defendant filed *pro se* his second motion for leave to file a successive postconviction petition. In this motion, defendant asserted he did not receive effective assistance of counsel because trial counsel failed to interview Harris and call him to testify. Defendant contended he could not have raised the claim earlier because Harris had been reluctant in providing an affidavit. Defendant attached Harris's affidavit to his proposed successive postconviction petition. In his proposed postconviction petition, defendant also asserted he received ineffective assistance of (1) trial counsel for failing to preserve defendant's prosecutorial misconduct and fourth amendment arguments and (2) appellate counsel for failing to raise the aforementioned issues as plain error.

¶ 18         In his affidavit, Harris stated he saw defendant and Benny talking. Benny pulled his cellular telephone out and made gestures with his hands. Around 40 to 50 seconds later, Harris witnessed Benny step to the right and try to pull a gun from the right side. While Benny was pulling out his gun, defendant pulled out his gun and began shooting. Benny turned around and took about five to six steps before falling to the ground. Harris saw Benny's cellular telephone tumble to the ground going one way and a chrome or silver automatic handgun go another way. Harris stated he was afraid and confused during his two statements to the police. Additionally, Harris stated he was unwilling to give an affidavit at first because (1) he was upset since he was serving time for something he did not do and (2) his counsel had advised him not to make a statement so as to not incriminate himself. Harris decided to write the affidavit after family members asked Harris to forgive defendant.

¶ 19            In a January 2, 2019, written order, the circuit court denied defendant's second motion for leave to file a successive postconviction petition. The court found defendant did not establish the prejudice prong. It noted Harris's affidavit was not credible because Harris did not come forth with his statement Benny had a gun until after he served his prison sentence. The court also stated defense counsel could not have talked with Harris since Harris had pending charges when defendant's case went to trial.

¶ 20            On March 18. 2019, defendant filed an untimely *pro se* notice of appeal. See Ill. S. Ct. R. 651(d) (eff. July 1, 2017) (providing the procedure for appeals in postconviction proceedings is in accordance with the rules governing criminal appeals); Ill. S. Ct. R. 606(b) (eff. July 1, 2017) (requiring the notice of appeal to be filed within 30 days of the final judgment appealed). In May 2019, defendant filed a motion for leave to file a late notice of appeal, which this court granted. On May 29, 2019, defendant filed a late notice of appeal in sufficient compliance with Illinois Supreme Court Rule 606 (eff. July 1, 2017). Thus, we have jurisdiction of defendant's appeal under Illinois Supreme Court Rule 651(a) (eff. July 1, 2017).

¶ 21                                    II. ANALYSIS

¶ 22            Defendant's only claim is his trial counsel was ineffective for failing to interview and call Harris as a witness. The State argues defendant cannot establish (1) cause because Harris's criminal case was pending when defendant's trial took place and (2) prejudice because no gun was found at the scene and defendant testified he did not see a gun. When the circuit court has not held an evidentiary hearing, this court reviews *de novo* the denial of a defendant's motion for leave to file a successive postconviction petition. See *People v. Gillespie*, 407 Ill. App. 3d 113, 124, 941 N.E.2d 441, 452 (2010).

¶ 23            Section 122-1(f) of the Postconviction Act (725 ILCS 5/122-1(f) (West 2018))

provides the following:

> "[O]nly one petition may be filed by a petitioner under this Article
> without leave of the court. Leave of court may be granted only if a
> petitioner demonstrates cause for his or her failure to bring the
> claim in his or her initial post-conviction proceedings and
> prejudice results from that failure. For purposes of this subsection
> (f): (1) a prisoner shows cause by identifying an objective factor
> that impeded his or her ability to raise a specific claim during his
> or her initial post-conviction proceedings; and (2) a prisoner shows
> prejudice by demonstrating that the claim not raised during his or
> her initial post-conviction proceedings so infected the trial that the
> resulting conviction or sentence violated due process."

Thus, for a defendant to obtain leave to file a successive postconviction petition, both prongs of the cause-and-prejudice test must be satisfied. *People v. Guerrero*, 2012 IL 112020, ¶ 15, 963 N.E.2d 909.

¶ 24    With a motion for leave to file a successive postconviction petition, the court is just conducting "a preliminary screening to determine whether defendant's *pro se* motion for leave to file a successive postconviction petition adequately alleges facts demonstrating cause and prejudice." *People v. Bailey*, 2017 IL 121450, ¶ 24, 102 N.E.3d 114. The court is only to ascertain "whether defendant has made a *prima facie* showing of cause and prejudice." *Bailey*, 2017 IL 121450, ¶ 24. If the defendant did so, the court grants the defendant leave to file the successive postconviction petition. *Bailey*, 2017 IL 121450, ¶ 24.

¶ 25    Defendant failed to make a *prima facie* showing of cause. The "objective factor"

defendant identified was Harris's reluctance to give an affidavit. In his October 2018 affidavit, defendant admitted he was trying to get an affidavit from Harris since "their conviction" and his motion for leave to file the successive postconviction petition indicated he did not raise the claim earlier because of the lack of the affidavit. However, section 122-2 of the Postconviction Act (725 ILCS 5/122-2 (West 2018)) provides "[t]he petition shall have attached thereto affidavits, records, or other evidence supporting its allegations *or shall state why the same are not attached*." (Emphasis added.) Thus, defendant could have raised his claim in his original petition and noted the affidavit was missing due to Harris's reluctance. Thus, we do not find Harris's reluctance in providing an affidavit was an objective factor that impeded defendant from raising his ineffective assistance of counsel claim in his original petition.

¶ 26　　　　Defendant also failed to make a *prima facie* claim of prejudice. This court analyzes ineffective assistance of counsel claims under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Evans*, 186 Ill. 2d 83, 93, 708 N.E.2d 1158, 1163 (1999). To obtain reversal under *Strickland*, a defendant must prove (1) his counsel's performance failed to meet an objective standard of competence and (2) counsel's deficient performance resulted in prejudice to the defendant. *Evans*, 186 Ill. 2d at 93, 708 N.E.2d at 1163. To satisfy the deficiency prong of *Strickland*, the defendant must demonstrate counsel made errors so serious and counsel's performance was so deficient that counsel was not functioning as "counsel" guaranteed by the sixth amendment (U.S. Const., amend. VI). *Evans*, 186 Ill. 2d at 93, 708 N.E.2d at 1163. Further, the defendant must overcome the strong presumption the challenged action or inaction could have been the product of sound trial strategy. *Evans*, 186 Ill. 2d at 93, 708 N.E.2d at 1163. To satisfy the prejudice prong, the defendant must prove a reasonable probability exists that, but for counsel's unprofessional errors, the proceeding's result

would have been different. *Evans*, 186 Ill. 2d at 93, 708 N.E.2d at 1163-64. Additionally, we evaluate counsel's performance from counsel's "perspective at the time, rather than through the lens of hindsight." *People v. Perry*, 224 Ill. 2d 312, 344, 864 N.E.2d 196, 216 (2007).

¶ 27 The State notes Harris's case was still pending when defendant was tried, and defendant does not dispute that fact in his reply brief. In his 2018 affidavit, Harris stated he was advised by his counsel not to make a statement to avoid incriminating himself. Thus, even if defendant's trial counsel had tried to interview Harris before defendant's trial, Harris would not have made a statement on the advice of counsel. Thus, defendant did not make a *prima facie* case of prejudice under *Strickland* based on counsel's alleged failure to interview Harris. Additionally, defendant did not make a *prima facie* case of ineffective assistance of counsel based on counsel's failure to call Harris to testify at defendant's trial. Trial counsel's decision not to call Harris was a product of sound trial strategy given Harris admitted in his affidavit he gave two statements to the police that were contrary to his statements in the affidavit.

¶ 28 Accordingly, we find the circuit court did not err by denying defendant's October 2018 motion for leave to file a successive postconviction petition.

¶ 29                                    III. CONCLUSION

¶ 30 For the reasons stated, we affirm the Macon County circuit court's judgment.

¶ 31 Affirmed.